UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | **REPORT, RECOMMENDATION AND ORDER** |
| v. | |
| YUAN ZHONG ZHAO, | 18-CR-00211(LJV)(JJM) |
|                Defendant. | |

_____

       Defendant Yuan Zhong Zhao is charged in a one-count Indictment [1][1] with the unlawful procurement of citizenship, in violation of 18 U.S.C. §1425(a).[2]  Before the court is defendant's pretrial omnibus motion [14], which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [4].[3]  Having reviewed the parties' submissions [14, 15, 16, 19, 20], and heard oral argument on May 14, 2019 [23], I recommend that the motion be denied to the extent that it seeks dismissal of the Indictment, and order that the remaining relief sought be granted in part and denied in part.

## BACKGROUND

       On October 12, 1991 defendant arrived at the Los Angeles International Airport on a Thai Airlines flight. [15-3].  An Immigration and Naturalization Service ("INS") "Memo to File" prepared that date by an Immigration Inspector stated that defendant presented himself without any documents and was referred to "Immigration secondary for further questioning". Id.

---

[1]      Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]      The Indictment also seeks revocation of defendant's citizenship pursuant to 8 U.S.C. §1451(e).

[3]      The government also moved for judicial notice of certain immigration laws [13], which was resolved at the May 14, 2019 oral argument [24].

Since defendant did "not speak English", they were "unable to obtain a sworn statement".  Id.

The Immigration Inspector "could only obtain" his name (incorrectly identified in the memo as

"Yen-Zhon Zhao") and other limited pedigree information, including a date of birth of December

7, 1974 (also incorrect), which made him 17 years old at the time and eligible for bail. Id.;

government's Memorandum of Law [13-1], p. 2.

        Defendant was detained for exclusion proceedings under alien file number A . . .

958 ("First A-file").   Government's Memorandum of Law [13-1], p. 2. Eric Tarankow, Esq., an

attorney hired for defendant, successfully moved to change the venue of that proceeding from

San Diego to Los Angeles. *See* Tarankow Affirmation [15-4]; November 14, 1991 Order [15-5].

Defendant alleges that he never met Mr. Tarankow or heard from him in any way prior to or

subsequent to his November 1991 release from custody on a $500 bond (also with the incorrect

date of birth of December 7, 1974).   Zhao Affidavit [15-2], ¶10; Immigration Bond [15-6].

Consequently, defendant failed to appear for a January 10, 1992 hearing in Los Angeles and was

ordered excluded from the United States on May 6, 1992. Zhao Affidavit [15-2], ¶11; Exclusion

Order [15-7].[4]

        Allegedly oblivious to the exclusion order, defendant traveled to New York and

started a life. Zhao Affidavit 15-2], ¶10.  He eventually applied for asylum in New York in 1993

and in connection with that application was fingerprinted and provided his actual date of birth of

March 11, 1971 [15-10].  Claiming no alien registration number, a new alien file, A . . . 985

("Second A-file") was opened for his asylum application, which was granted in New York, New

---

[4]     Mr. Tarankow later resigned from the State Bar of California. [15-9], pp. 1-4 of 203 (CM/ECF).
As defendant characterizes it, Mr. Tarankow's lengthy disciplinary record suggests that he conducted
himself in the same manner with other clients as he did in defendant's case.

York in 1999. *See* Government's Memorandum of Law [13-1], pp. 2-3; Order [15-11].[5]

Defendant took the next step in the immigration process by adjusting his asylum status in 2007 to

that of an alien admitted for permanent residence.  *See* Government's Memorandum of Law [13-

1], p. 3; defendant's Memorandum of Law [15], p. 10.  Under the Second A-file, he applied for

naturalization in March 2011, and was naturalized on September 16, 2011.  Government's

Memorandum of Law [13-1], p. 3.

        The Indictment alleges that on or about the date of his naturalization, he

"knowingly procured and attempted to procure, contrary to law, naturalization for himself, in that

the defendant, in his Form N-400 Application for Naturalization, responded 'No' to the question

'Have you have given false or misleading information to any U.S. government official while

applying for any immigration benefit or to prevent deportation, exclusion or removal?'" ("Lie

Number 2"), in violation of 18 U.S.C. §1425(a).[6]  Although not alleged in the Indictment, the

government's theory of the case is that defendant's answer on his Form N-400 Application to

Question 23 untrue because he had previously provided a false date of birth to INS officials at

the Los Angeles International Airport in 1991 ("Lie Number 1").  Government's Response [19],

pp. 2-3.

---

[5]     Although his fingerprints may have revealed the existence of his First A-File, they were apparently never entered into the government database. *See* defendant's Memorandum of Law [15], p. 9 n. 4.

[6]     The government identifies the N-400 Application question at issue as Question 23. Government's Response [19], p. 9.

**DISCUSSION**

A.      **Motion to Dismiss the Indictment Based on the Government's Theory
        of the Case**

Relying on the government's theory of the case, defendant seeks dismissal of the

Indictment on two grounds: first, that Lie Number 1 "was not a lie that bestowed an immigration

benefit as required by the statute"; and second, that Lie Number 1 was not a "disqualifying fact"

as required by Maslenjak v. United States, __ U.S. __, 137 S. Ct. 1918 (2017).  Defendant's

Memorandum of Law [15], Point I.

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for

extremely limited circumstances implicating fundamental rights." United States v. De La Pava,

268 F.3d 157, 165 (2d Cir. 2001). That is because "[a]n indictment returned by a legally

constituted and unbiased grand jury . . .  if valid on its face, is enough to call for trial of the

charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956).  See United States v.

Coffey, 361 F. Supp. 2d 102, 111 (E.D.N.Y. 2005) ("the validity of an indictment is tested by its

allegations, not by whether the Government can prove its case").

Generally, "summary judgment does not exist in federal criminal procedure",

since "the sufficiency of the evidence is not appropriately addressed by" a pretrial motion to

dismiss.  United States v. Sampson, 898 F.3d 270, 282 (2d Cir. 2018); United States v. Parker,

165 F.Supp.2d 431, 458 (W.D.N.Y. 2001).  It is only in the "extraordinarily narrow"

circumstance when the government offers "what can fairly be described as a *full* proffer of the

evidence it intends to present at trial", that the sufficiency of the evidence may be tested.

Sampson, 898 F.3d at 282 (emphasis added).

Although the government offers only what it contends is a *limited* proffer of its

facts (*see* government's Memorandum of Law [13-1], p. 2 n. 1), it does not dispute or point to gaps in the facts relied upon by defendant in support of the motion.  In any event, it is unnecessary for me to decide whether this constitutes the limited circumstance where the sufficiency of the evidence may be tested, because even assuming that defendant's version of events constitutes the government's full proffer of the evidence, the record fails to establish a basis for dismissal.

### 1.     Did Defendant Lie on his N-400 Application?

Defendant argues that Lie Number 1 concerning his age "was not a lie that bestowed an immigration benefit".  Defendant's Memorandum of Law [15], p. 12.  The requirement of an immigration benefit derives from Question 23 on the form N-400 Application that defendant allegedly falsely answered:  "Have you have given false or misleading information to any U.S. government official while applying for any *immigration benefit* or to prevent deportation, exclusion or removal?'' (emphasis added).

Defendant argues that "answering simple pedigree questions" does not "equate[ ] to *applying* for anything". Defendant's Reply Memorandum [20], p. 6 (emphasis in original). That argument attempts to separate the questions being asked from the context in which they were being asked.  Even if merely pedigree questions, they were being asked in connection with defendant's requested admission into the United States.  Although I have been unable to locate any specific authority on the question of whether seeking admission into the United States constitutes an immigration benefit, in other contexts the government has answered that question affirmatively.  *See* 8 *United States Citizenship and Immigration Services Policy Manual,* Part J, Chapter 3 ("[t]o find a person inadmissible for fraud . . .  there must be at least some evidence that would permit a reasonable person to find that the person used fraud . . .  in an attempt to

obtain . . .  admission into the United States, or any other immigration benefit"). I see no reason why a lay person would have interpreted that phrase differently.

Defendant points to 8 U.S.C. §1572(2), which defines "immigration benefit application" as "any application or petition to confer, certify, change, adjust, or extend any status granted under the Immigration and Nationality Act". Defendant's Reply Memorandum [20], p. 6. However, there is nothing to suggest that the statutory definition of "immigration benefit application" was intended to govern the questions on the N-400 Application. In fact, §1572 expressly limits the applicability of the definition of "immigration benefit application" to that subchapter of the Act addressing Immigration Services and Infrastructure Improvements. If that term was intended to be applicable to the N-400 Application, Question 23 would have specifically asked: Have you given false or misleading information on an immigration benefit application? It did not.

### 2.     Does Lie Number 1 Satisfy the Causal Element?

18 U.S.C. §1425(a) provides that "[w]hoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship" is guilty of an offense. The elements of §1425(a) violation are "(1) defendant procured United States citizenship through naturalization, (2) defendant committed an illegal act in connection with obtaining naturalization, (3) defendant did so knowingly, and (4) defendant's illegal act 'caused' defendant to be naturalized." United States v. Habteyes, 356 F. Supp. 3d 555, 558 (E.D. Va. 2018). Disputed here is the fourth element.

The "causal inquiry under § 1425(a) is framed in objective terms: To decide whether a defendant acquired citizenship by means of a lie, a jury must evaluate how knowledge

of the real facts would have affected a reasonable government official properly applying naturalization law." Maslenjak,137 S.Ct. at 1928.  There are two theories to satisfy the causal element.  The first is a direct theory:  "If the facts the defendant misrepresented are themselves disqualifying . . . . there is an obvious causal link between the defendant's lie and her procurement of citizenship".  Id. at 1928.  For example, if "a defendant misrepresented her travel history to convey she had met that requirement, when in fact she had not.  The Government need only expose that lie to establish that she obtained naturalization illegally - for had she told the truth instead, the official would have promptly denied her application." Id.

Under the second, "investigation-based" theory, "the Government must make a two-part showing . . . . that the misrepresented fact was sufficiently relevant to one or another naturalization criterion that it would have prompted reasonable officials, seeking only evidence concerning citizenship qualifications, to undertake further investigation" and "that the investigation would predictably have disclosed some legal disqualification". Id. at 1929.

The government relies on the investigation-based theory.  It contends that "had the defendant truthfully answered 'yes'" to Question 23, "further probing of the circumstances would have revealed the existence of Lie Number 1 and the alien file for which it was made. Contained in that A-file were facts relevant to the defendant's disqualification for citizenship, such as the issuance of an order of exclusion in absentia for the defendant on January 10, 1992, and his subsequent unlawful adjustment of status to alien admitted for permanent residence". Government's Response [19], p. 3.  According to the government, the "combined effect[]" of the immigration laws that were the subject of its Motion for Judicial Notice [13] is that defendant's "grant of asylum in 1999 was without jurisdiction, his adjustment of status in 2007 was unlawful,

and, therefore, he was ineligible for naturalization in 2011".  Government's Memorandum of Law [13-1], p. 7.

Defendant does not dispute that the discovery of the First A-file would have created a defect in his 2011 naturalization.  Instead, he argues that "[a]t most, it affected venue in which his quest [for naturalization] was to be properly asserted".  Defendant's Memorandum of Law [15], p. 17.  According to him, "the 'real fact' behind Lie Number 1 is that [he] was 20 and not 17 when he entered the country", but the discovery of that fact would not "have disqualified [him] from seeking asylum, or from procuring citizenship".  Defendant's Reply Memorandum [20], p. 6; Memorandum of Law [15], pp. 16-17.

Maskenjak cannot be read that narrowly.  In fact, it expressly held that "the Government need not show definitively that its investigation would have unearthed a disqualifying fact (though, of course, it may). Rather, the Government need only establish that the investigation would predictably have disclosed *some legal disqualification*." Maslenjak, 137 S. Ct. at 1929 (emphasis added), 1929 ("the inquiry turns to the prospect that such an investigation would have borne *disqualifying fruit*" (emphasis added)), and 1931 ("the jury could have convicted . . . [the] inquiry would predictably have yielded a *legal basis for rejecting her citizenship application*" (emphasis added)).  Hence, even if defendant's truthful answer to Question 23 on the N-400 Application would not have led to the discovery of a fact that itself would have disqualified him for naturalization, he remains in violation of §1425(a) if the investigation would have led to the discovery of a legal basis for why he was not qualified for naturalization.

In any event, "even when the Government can make its two-part showing" under the investigation theory, Maslenjak recognized that the defendant may be able to establish a

complete defense by demonstrating qualification for citizenship. <u>Id</u>. at 1930. It explained that "Section 1425(a) is not a tool for denaturalizing people who, the available evidence indicates, were actually qualified for the *citizenship they obtained*." <u>Id</u>. (emphasis added). Here, however, it remains undisputed that defendant was not qualified for the naturalized citizen status he obtained in 2011, even if it was caused by procedural (as oppose to substantive) deficiencies. Therefore, I recommend that this motion be denied.


**B.      Motion to Dismiss the Indictment as being Constitutionally Vague and Facially Insufficient**

Fed. R. Crim P. ("Rule") 7(c) requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged". Those requirements "perform[] three constitutionally required functions: It fulfills the Sixth Amendment right 'to be informed of the nature and cause of the accusation;' it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury". <u>United States v. Walsh</u>, 194 F.3d 37, 44 (2d Cir. 1999).

Defendant argues that "the Indictment does not allege that [his] answer [to Question 23] was given falsely". Defendant's Memorandum of Law [15], p. 18. However, as the government argues, "'an indictment must be read to include facts which are necessarily implied by the specific allegations made'". Government's Response [19], p. 7 (*quoting* <u>United States v. Stavroulakis</u>, 952 F.2d 686, 693 (2d Cir. 1992)). Here, it can readily be inferred from the Indictment that it is alleged that the answer to Question 23 of the N-400 application was false.

Defendant next argues that the Indictment does not afford him sufficient notice of the crime he is to defend against by failing to allege "why the [answer to the N-400 Application question] . . . was false or misleading". Defendant's Memorandum of Law [15], p. 18. The government responds that "'[w]hen an indictment delineates the elements of a charged offense, however, concisely, the underlying concerning of proper pleading - notice of the charge to be met and protection against double jeopardy - may be further promoted by a bill of particulars or pretrial discovery.'" Government's Response [19], p. 7 (*quoting* <u>Stavroulakis</u>, 952 F.2d at 693). The government also notes that defendant's motion demonstrates his knowledge of its theory of the case. <u>Id</u>.

Often "indictments that do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime" are sufficient. <u>Walsh</u>, 194 F.3d at 44. However, that is not always sufficient. A defendant "must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him", and a defendant should not be forced "to go to trial with the chief issue undefined". <u>Russell v. United States</u>, 369 U.S. 749, 766 (1962). It is only where a defendant is "given *notice* of the *core of criminality* to be proven at trial" that "significant flexibility in proof" is permitted. <u>United States v. Rigas</u>, 490 F.3d 208, 228 (2d Cir. 2007) (emphasis in original). Thus, "for an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." <u>United States v. Pirro</u>, 212 F.3d 86, 91 (2d Cir. 2000).

While there is no "universal requirement" for doing so, there are also certain statutes where "specification of how a particular element of a criminal charge will be met (as

opposed to categorical recitation of the element) is of such importance to the fairness of the proceeding that it must be spelled out in the indictment".  United States v. Stringer, 730 F.3d 120, 126 (2d Cir. 2013); Hamling v. United States, 418 U.S. 87, 118 (1974) ("[w]here guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute").

Defendant does not specifically dispute that the elements of a §1425(a) violation are pled.  Instead, he argues that he should not be required "to go to trial with the chief issue undefined, *i.e.*, what he allegedly misrepresented in the past".  Defendant's Memorandum of Law [15], p. 20. While I am sympathetic to that argument, it lacks sufficient legal support. 18 U.S.C. §1425(a) criminalizes procuring or attempting to procure naturalization "contrary to law".  The statute does not define the phrase "contrary to law".  In those circumstances, "courts generally hold that '[i]f a statute makes it a crime to engage in certain conduct 'contrary to law,' it is not enough simply to cite that statute and recite in the pleading that the act was contrary to law - the pleading must show what other law was violated, either by citation to the other statute or by sufficient factual allegations.'"  United States v. Thompson, 141 F. Supp. 3d 188, 195 (E.D.N.Y. 2015), aff'd, 896 F.3d 155 (2d Cir. 2018) (*quoting* Charles Alan Wright, *et. al.*, 1 Federal Practice & Procedure (Criminal), §124 (4th ed. 2014)).  As used in §1425(a), "contrary to law" has "been interpreted to mean a violation of the laws governing naturalization".  United States v. Djanson, 578 Fed. App'x 238, 239 (4th Cir. 2014).  Since "knowingly making material false statements to procure naturalization is always contrary to the law", the Indictment sufficiently notifies defendant of the conduct that the government alleges is contrary to law.  Id.

Defendant has also failed to establish that the core of criminality for a §1425(a) violation based on a false statement requires an explanation of what rendered the statement false. In the similar circumstance of a charge of making a false statement, the Second Circuit has held that "the 'core of criminality' is not the substance of the false statements but rather that knowing falsehoods were submitted". Rigas, 490 F.3d at 229.  *See also* United States v. Raniere, 2019 WL 1903365, *14 (E.D.N.Y. 2019) (finding that an Indictment alleging that the defendant submitted "materially false and fraudulent statements" to a United States consulate was not facially insufficient where it identified that the alleged false statements were contained in a letter that the defendant submitted to the consulate, but did not identify the particular falsehoods contained in that letter or explain why they were false).

Here, defendant has been apprised that his alleged conduct is based on a particular false answer to Question 23 of the N-400 Application.  While the universe of potential reasons why that answer was allegedly false is certainly broad, given the guidance in Rigas, additional notice of the factual underpinnings of why that statement was allegedly false is not required.  *See* Habteyes, 356 F. Supp. 3d at 559 (the defendant was provided with sufficient notice of a §1425(a) violation where the Indictment identified "the means by which defendant allegedly procured his naturalization contrary to law, namely 'by knowingly making materially false representations on his Form N-400, Application for Naturalization, and in sworn statements to immigration and naturalization officials'" and identified "the representations allegedly made by defendant that the government contends were materially false - . . . 'that he had never given false or misleading information to any United States government official while applying for any immigration benefit'").

Nor does anything "in the Maslenjak decision indicate[ ] that an

indictment charging a violation of Section 1425(a) should be dismissed because the indictment does not mention an element of 'materiality,' or because 'there is no indication . . . that the grand jury . . . found materiality of false statements as an element for its probable cause determination,' or because it 'does not contain factual allegations from which it can reasonably be inferred that the grand jury found that any false statements forming the basis for th[e] prosecution.'" United States v. Balogun, 2018 WL 1147544, *9 (N.D. Ga.), adopted, 2018 WL 1128263 (N.D. Ga. 2018). Therefore, I conclude that the Indictment is facially sufficient and recommend that this motion be denied.[7]


## C.    Motion for Disclosure of Grand Jury Materials

While "grand jury proceedings are subject to strict secrecy requirements" United States v. R. Enterprises, Inc., 498 U.S. 292, 299 (1991), that secrecy is not absolute. Fed. R. Crim. P. ("Rule") 6(e)(3)(E)(ii) permits disclosure of grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury". Therefore, "the standard for dismissing an indictment is relevant to the standard for disclosure of grand jury materials". United States v. Way, 2015 WL 8780540, at *4 (E.D. Cal. 2015). "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." United States v. Calandra, 414 U.S. 338, 345 (1974). However, courts may "dismiss an indictment

---

[7]    Although it would not be a cure for a facially deficient Indictment, which cannot be saved by a bill of particulars, Russell, 369 U.S. at 770, the government has made clear that the underlying falsehood is Lie Number 1. As the government recognizes, it has advanced "only one theory of guilt" and "[d]eviation from this theory . . . at trial subjects [it] to risk of constructive amendment and prejudicial variance". Government's Response [19], p. 9. Hence, defendant will not be going to trial with "the chief issue undefined".

because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions". United States v. Williams, 504 U.S. 36, 46 (1992).

Since "a presumption of regularity attaches to grand jury proceedings" United States v. Leung, 40 F.3d 577, 581 (2d Cir. 1994), defendant has the "burden of asserting that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment". United States v. Abcasis, 785 F. Supp. 1113, 1119 (E.D.N.Y. 1992). See also United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990), abrogated on other grounds by United States v. Marcus, 628 F.3d 36 (2d Cir. 2010) (disclosure "is rarely permitted without specific factual allegations of government misconduct"); Leung, 40 F.3d at 582 ("[a] review of grand jury minutes should not be permitted without concrete allegations of Government misconduct").

As defendant recognizes, he "bears a heavy burden".  Defendant's Memorandum of Law [15], p. 22.  The "strong presumption of regularity in grand jury proceedings . . . . cannot be outweighed by conclusory or speculative allegations of misconduct". United States v. Morgan, 845 F. Supp. 934, 941 (D. Conn. 1994), aff'd, 51 F.3d 1105 (2d Cir. 1995). See United States v. Sandford, 2016 WL 791435, *4 (W.D.N.Y.), adopted, 2016 WL 3951217 (W.D.N.Y. 2016) ("[u]nspecified allegations of impropriety or mere speculation are not sufficient to satisfy this heavy burden"). Given this demanding standard, "[d]isclosure . . . will be denied in all but extraordinary circumstances". Morgan, 845 F. Supp. at 941. See Abcasis, 785 F. Supp. at 1119 ("motions to inspect grand jury minutes should be granted sparingly"); United States v. Castiglia,

1987 WL 30591, *1 (W.D.N.Y. 1987) ("[d]isclosure of grand jury minutes is extraordinary relief"). With these considerations in mind, I will address defendant's arguments.

Defendant's reliance on the government's theory of the case to support dismissal of the Indictment also underlies his motion for disclosure of the grand jury minutes: "the Grand Jury may have been misinformed about the very issue at the heart of this case - whether [defendant] misrepresenting his age upon his entry into the United States fall within the ambit of [§1425(a)]". Defendant's Memorandum of Law [15], p. 24. Since I have concluded that Lie Number 1 could provide a basis for a §1425(a) violation, defendant has not established that grounds may exist for dismissal because of matters that occurred before the grand jury. *See* Balogun, 2018 WL 1147544, *10 n. 5 ("because the indictment appears to be valid, this Court declines to inspect, *in camera*, the transcript of the grand jury proceedings to determine whether the grand jury was informed it must find probable cause for the offense element that Defendant made false statements that were material to her procurement of naturalization").

Alternatively, defendant seeks the court to perform an *in camera* review of just the grand jury instructions "in order to discern whether [it] was properly instructed on the law". Defendant's Memorandum of Law [15], p. 24. "As an initial matter, the Government is not required to provide a grand jury with legal instructions". United States v. Smith, 105 F. Supp. 3d 255, 260 (W.D.N.Y. 2015). In any event, this more limited request does not lessen defendant's burden. Id. at 259-60 ("courts within the Second Circuit Court of Appeals have consistently held that obtaining grand jury instructions requires a showing of particularized need" and that "standard applies to both production and *in camera* inspection of grand jury materials"). Since defendant relies upon the same argument for seeking an *in camera* review of the grand jury

instructions - namely, whether the grand jury was properly instructed on the law - this portion of the motion is likewise denied.   Defendant's Memorandum of Law [15], pp. 24-25.

**D.      Motion for Disclosures Pursuant to Fed. R. Evid. 404(b)**

Defendant seeks disclosure of evidence of other crimes, wrongs or acts pursuant to Fed. R. Evid. 404(b) 60 days prior to trial.  Defendant's Memorandum of Law [15], Point IV. Fed. R. Evid. 404(b)(2)(A) requires that the government to "provide reasonable notice of the general nature of any such [Fed. R. Evid. 404(b)] evidence that the prosecutor intends to introduce at trial".  Since the government does not respond to this motion, it is granted to the extent that the government shall comply with Fed. R. Evid. 404(b)(2)(A) by a time no later than as directed by the trial judge. *See* United States v. Busch, 2014 WL 2435596, *5 (W.D.N.Y. 2014).  To the extent that defendant requests a pre-trial hearing "to resolve all legal and factual issues regarding the admissibility of such evidence" (defendant's Memorandum of Law [15], p. 30), that issue is deferred to the trial judge after the government's compliance with Fed. R. Evid. 404(b).

**E.      Motion for Immediate Disclosure of Brady and Giglio Material**[8]

Defendant seeks disclosure of these materials "forthwith". Defendant's Memorandum of Law [15], Point VI.  In response, the government represents that "recognizes its affirmative dut[ies]" pursuant to Brady and Giglio, and will produce Brady material "if and when it is aware of it".  Government's Response [19], pp. 13-14.

---

[8]      Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972).

"The government's obligations under Brady . . . are seemingly well-established. The prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment . . . . This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (citing Giglio, 405 U.S. at 154). Generally, "Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant". Coppa, 267 F.3d at 146. "[A]s long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." Id. at 144. "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case". Id. at 146.

"Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to Brady where the Government, as here, has made a good-faith representation to the Court and defense counsel that it recognizes and will comply with its disclosure obligations under Brady." United States v. Kelly, 91 F. Supp. 2d 580, 584 (S.D.N.Y. 2000). At this point, I have no reason to question the government's representations. See United States v. Savarese, 2002 WL 265153, *2 (S.D.N.Y. 2002) ("district courts in this circuit routinely accept the type of representation that the Government has made concerning Brady material").

With respect to defendant's request for immediate production of Giglio material "the government need not provide [that] material immediately; instead Giglio material must be disclosed in time for its effective use at trial". United States v. Weaver, 992 F. Supp. 2d 152, 160 (E.D.N.Y. 2014). Therefore, the motion is denied insofar as it seeks immediate production of the Giglio material. Nevertheless, consistent with the government's representation that it

-17-

understands its affirmative duties under <u>Giglio</u>, these materials shall be produced in time for effective use at trial, but in no event later than any deadline set by the trial judge.

**F.     Motion for Production of a Witness List**

Defendant moves for the government to "disclose a list of witnesses in a manner which will afford the defense sufficient time to prepare for trial". Defendant's Memorandum of Law [15], Point VII. Since the government does not oppose this motion, it is granted. The government shall produce a witness list by the deadline set by the trial judge.

**G.     Motion for a Bill of Particulars**

Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense". <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." <u>United States v. Walsh</u>, 194 F.3d 37, 47 (2d Cir. 1999). "[T]he burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights". <u>United States v. Duarte</u>, 2014 WL 29366, *1 (W.D.N.Y. 2014).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." <u>United States v. Conley</u>, 2002

WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form". United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). See United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("[i]n determining whether a defendant has shown such necessity, the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery"). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

With this standard in mind, I will address defendant's request for particularization, which seeks the following:

"1. Specify the alleged misrepresentations made by Mr. Zhao.

2. Specify the date, time, and to whom, each alleged misrepresentation was made.

3. Specify what immigration benefit that Mr. Zhao was applying for when he made each misrepresentation, or specify whether Mr. Zhao was attempting to prevent deportation, exclusion or removal.

4. Specify the manner in which each misrepresentation contributed to Mr. Zhao unlawfully procuring naturalization.

5. Specify whether it is alleged that the misrepresentation was about a 'disqualifying fact.' . . .

6. Specify how disclosure of each alleged misrepresentation would have led to discovery of a 'disqualifying fact' and identify what those 'disqualify facts' are.

7. Specify how a reasonable government official would have investigated the disclosure of each alleged misrepresentation." Defendant's Memorandum of Law [15], p. 40.

Much of the particularization defendant seeks has been provided by the government, albeit not in the form of a bill of particulars. Nonetheless, I deem the government's theory of the case as set forth in the government's Response ([19], pp. 2-3) and its Memorandum of Law in Support of its Motion for Judicial Notice ([13-1], pp. 7-8) to effectively constitute a bill of particulars.  *See* United States v. Vendetti, 2013 WL 5522860, *13 (W.D.N.Y.), adopted, 2013 WL 5522434 (W.D.N.Y. 2013) ("[w]hile not in the form of a bill of particulars, I deem the government's recitation of facts to constitute a bill of particulars"); United States v. Harris, 2017 WL 7050012, *12 (W.D.N.Y. 2017), adopted, 2018 WL 514180 (W.D.N.Y. 2018) (same); United States v. Makki, 2007 WL 781821, *6 (E.D. Mich. 2007) ("[a]lthough this list [attached to the government's response to the defendant's motion] is not in the form of a Bill of Particulars, the Court can deem such exhibits to be a Bill of Particulars").  Therefore, the motion is denied as moot.

**H.      Motion for Leave to File Additional Motions**

Defendant seeks leave "if necessary, to file additional supplemental motions, based upon the resolution of the issues raises herein or the provision of additional discovery provided by the Government".  Defendant's Memorandum of Law [15], Point IX.  Since the government does not respond to this motion, it is granted.

**CONCLUSION**

For these reasons, I recommend that defendant's pretrial omnibus motion [14] be denied to the extent that it seeks to dismiss the Indictment, and order that the remaining relief be granted in part and denied in part as set forth herein.  Unless otherwise ordered by Judge Vilardo,

any objections to this Report, Recommendation and Order must be filed with the clerk of this court by June 26, 2019. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: June 12, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge